UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| BRANDON M. CONWAY, | ) | |
| Institutional ID No. 1777537, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:15-CV-149-BG |
| CORRECTIONAL OFFICER | ) | ECF |
| PETER H. HONESTO, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Brandon M. Conway, a prisoner incarcerated by Texas Department of Criminal Justice (TDCJ), filed this civil rights action *pro se* and paid the filing fee. The United States District Judge thereafter reassigned the action to the undersigned United States Magistrate Judge for preliminary screening. The undersigned has analyzed Conway's claims under 28 U.S.C. § 1915A and 42 U.S.C. § 1997e and case law applicable to the Prison Litigation Reform Act (PLRA). Because Conway filed notice of non-consent prior to the transfer of this action, the undersigned enters this Report and Recommendation. *See* Order, ECF No. 25 (requiring report and transfer to the district judge in the absence of consent).

**I.      Preliminary Screening Standard**

The screening standard under 28 U.S.C. § 1915A requires a court to dismiss an action brought by an inmate against a governmental entity or employee of a governmental entity if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b) (2015); *see also* 42 U.S.C. § 1997e(c)(1) (2015) (requiring dismissal of prisoner claims

brought with respect to prison conditions on the same grounds). The court may *sua sponte* dismiss a prisoner's complaint under these standards even if the plaintiff paid the filing fee, *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998), and must do so, when feasible, before service of process on the defendants. 28 U.S.C. § 1915A(a).

The undersigned required Conway to provide responses to a questionnaire, and he complied. *See Brewster v. Dretke*, 587 F.3d 764, 767–78 (5th Cir. 2009); *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (acknowledging the use of a questionnaire to aid review of a *pro se* litigant's complaint at the preliminary screening stage). Responses to a questionnaire become part of the plaintiff's pleadings, *Berry*, 192 F.3d at 507, and the undersigned considered Conway's responses in conjunction with his Complaint and the memorandum he filed with his Complaint. *See* ECF Nos. 1, 5, 29. The undersigned also considered authenticated records from TDCJ.

## II.     Conway's Allegations

Conway identifies the Defendant as Officer Honesto, a correctional officer employed at the Montford Unit, the unit to which Conway is assigned. The actions that gave rise to his action against Honesto allegedly began on April 14, 2015, when Honesto's daughter, an individual who is also employed as a correctional officer at the prison, escorted Conway and his cell mate to the prison cafeteria.[1] ECF No. 1 at 4. According to Conway, Honesto's daughter and his cell mate "had words" during the escort, the officer escorted Conway's cell mate back to the cell rather than to the cafeteria and told Conway that he was also "talking about her and she was going to pay him back too for talking about her." *Id*. Conway claims Honesto's daughter refused to feed his cell mate

---

[1] Conway initially identifies this officer as Honesto's sister but thereafter refers to her as Honesto's daughter. The undersigned has therefore referred to the individual as Honesto's daughter. *See* ECF No. 1 at 4, 6–7,

thereafter, a confrontation occurred between the cell mate and officers, and officers used chemical agents to subdue the cell mate. *Id*. at 5. According to Conway, Honesto's daughter later returned to his cell row and stated, "You talked about me too and your [sic] next." *Id*.

Conway alleges that he was standing in a hallway with other inmates waiting for an escort to his cell the following day when Honesto approached him, told him to put his hands down, and spit in his face "with a spraying-type effect." *Id*. at 6. He further alleges that he backed up from the spray of saliva and Honesto used a racial epithet and told him that he did not "like [ ] who file lawsuits against my employers and you was bothering my daughter . . . I'm going to kill you . . . ." *Id*. Conway claims that at another time, Honesto reiterated the threat, told him that he did not like inmates who file lawsuits, did not appreciate Conway's disrespect toward his daughter, and stated, "I just took your parole . . . you'll be getting my assault case." *Id*. at 7.

Conway characterizes Honesto's actions in the hallway as a "misuse of force" and a "use of force." *Id*. at 5, 10. He alleges that the force used was "without need or provocation," was malicious and sadistic, violated his Eighth Amendment rights, and constitutes an assault under Texas tort law. *Id*. at 10, 12. He further alleges that Honesto's actions constitute discrimination; he specifically claims that Honesto discriminated against him because he is African-American and claims that Honesto has a reputation of discriminating against black prisoners and using violent and aggressive actions toward them. ECF No. 5 at 4.

Conway complains next of denial of due process. He claims officers approached him in the day room an hour after his confrontation with Honesto, searched and handcuffed him, and escorted him to administrative segregation. He claims he was later served with a disciplinary charge of assaulting a correctional officer.

3

Conway complains that he was forced to remain in an administrative segregation cell for twenty-one days as a result and was found guilty of the disciplinary charge based solely on Honesto's "word" and credibility. He contends that Honesto falsified the charge and that he did so maliciously and sadistically and that Honesto's actions violated his Eighth Amendment and due process rights. *Id*. at 10, 12.

The remaining claims in this action relate to threats that Honesto allegedly made against Conway and members of his family. Conway claims that Honesto came to his cell in May 2015 and told him that he was going to make sure that his psychiatric treatment and prescriptions were discontinued and was going to thereafter kill him and rape and kill his wife and daughters. *Id*. at 8. According to Conway, Honesto then stated, "Have a nice day [ ] lawsuit man." *Id*. Conway contends that Honesto made the threats because of the civil rights action he filed in the Southern District of Texas. He contends that the action is pending before the Court of Appeals for the Fifth Circuit and claims that Honesto made these threats and others in order to intimidate him and deter him from testifying in the action. *Id*. at 10–11, 14. The undersigned has construed these allegations as a retaliation and access to courts claim.

Conway asserts his remaining claim under the Americans with Disabilities Act (ADA). Although it is not entirely clear why Conway believes he is entitled to relief under the ADA, he asserts that he suffers from a psychiatric disorder and is undergoing treatment at the Montford Unit for same.

Conway seeks declaratory, injunctive, and monetary relief. He specifically asks the court to find that Honesto violated his constitutional rights; issue injunctive relief to protect him from further wrongful acts and threats from Honesto; and award $3.5 million for the "various forms of assault

[that Honesto] inflicted," damages in the amount of $200 for each of the twenty-one days he was confined in the administrative segregation cell, and $35,000 in punitive damages.

### III.    Discussion

####    A.    *Allegations Regarding Incident in Hallway*

Conway characterizes the actions Honesto allegedly took in the hall on April 14, 2015, as a "misuse of force" and states in his prayer for relief that Honesto utilized a "use of force against Plaintiff without need or provocation." ECF No. 10. Conway's claim is based on his allegation that Honesto spat in his face. This allegation does not state a constitutional claim. The Eighth Amendment prohibits punishments that involve unnecessary and wanton infliction of pain. *Gregg v. Georgia*, 428 U.S. 153 (1976). Relevant here, a *de minimis* action does not violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Although the act of spitting in another's face is a loathsome act, it is a *de minimis* action that does not rise to the level of an Eighth Amendment violation. *See*, *e.g.*, *McBride v. Ausbie*, No. 3:14-CV-317-M, 2014 WL 5032720, at *3 (N.D. Tex. Oct. 8, 2014).

Because Conway's Eighth Amendment claim lacks an arguable basis in law, it must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). In addition and in the alternative, Conway's request for $3.5 million in compensatory damages is barred by the PLRA's physical injury bar: the Act directs that "[n]o federal civil action may be brought . . . by a prisoner for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see Geiger v. Jowers*, 404 F.3d 371, 374–375 (5th Cir. 2005) (strictly applying the PLRA's physical injury requirement to prisoner's claim for compensatory damages).

The remaining claims related to the alleged use of force must likewise be dismissed. Conway asserts a claim under Texas tort law; however, a court may decline to exercise jurisdiction over supplemental state law claims if it dismisses the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). In addition, although Conway complains that Honesto used a racial epithet when he addressed him, the use of a racial epithet without action that deprives the plaintiff of his constitutional rights does not rise to the level of a constitutional claim. *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999); *see also Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (holding that a derogatory racial epithet is not a deprivation of liberty).

Conway also asserts a claim of discrimination. He claims that Honesto discriminated against him on the basis of his race. He alleges that he is an African-American state prisoner "and not a Mexican state prisoner" and Honesto has a "well-known reputation in the prison and employee population for discriminating against black prisoners with violent, aggressive actions." ECF No. 5 at 4. Conway's assertions invoke the Fourteenth Amendment, which protects prisoners from "invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (5th Cir. 1974). In order to establish a claim under the Fourteenth Amendment a plaintiff must show that a particular group was singled out for disparate treatment at least in part for the purpose of causing an adverse effect on the group. *Lavernia v. Lynaugh*, 845 F.3d 493, 496 (5th Cir. 1988). Put another way, the plaintiff must show that the group "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001). Conway has set forth conclusory allegations of discrimination; he has not shown that African-American prisoners were treated differently or denied rights that were provided to other racial groups. His allegations, though they may demonstrate

harassment on the part of Honesto toward Conway, do not rise to the level of an equal protection claim.

Finally, Conway appears to allege that Honesto threatened and spat upon him in order to retaliate against him because he witnessed the interaction between Honesto's daughter and his cell mate and to retaliate, intimidate, and harass him because he filed the civil rights action in the Southern District of Texas. *See* ECF Nos. 1 at 6; 5 at 4.

In regard to Conway's retaliation claims, an analysis must begin by acknowledging that "[a] prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). Thus, in order to establish a threshold element of a retaliation claim, the inmate must point to the exercise of a specific constitutionally protected activity that resulted in the alleged retaliation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

Conway's claim that he merely witnessed actions of Honesto's daughter is not constitutionally protected activity; Conway has not alleged that he complained of Honesto's daughter's actions. His allegations of retaliation as they relate to the actions he witnessed do not, therefore, support a retaliation claim. On the other hand, complaining of alleged wrongful action in a federal court is constitutionally protected activity. Thus, the court must determine whether Conway's allegation that Honesto spat upon him and threatened him because of the action in the Southern District of Texas states a valid retaliation claim. Conway may state a claim if he shows that Honesto intended to retaliate against him because he filed the civil rights action, a retaliatory adverse act, and causation. *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999). He must "produce direct evidence of motivation or, the more probable scenario, allege a chronology of events

7

from which retaliation may plausibly be inferred." *Id.* at 325. (internal quotations omitted). "The inmate must allege more than his personal belief that he is the victim of retaliation." *Id.*

Conway has not produced evidence showing a chronology of events from which this court could plausibly infer that Honesto retaliated against him because of the action he filed in the Southern District of Texas. Conway filed the action on December 15, 2014, four months prior to the disciplinary case, and identified the Defendants as his criminal defense attorney, TDCJ records department, and the Texas Board of Pardons and Paroles. Conway did not name Honesto or any other individual employed at the Montford Unit as a Defendant, and his claims relate to his criminal conviction and parole proceedings rather than any misconduct on the part of a TDCJ official. Given these facts, retaliation cannot plausibly be inferred.

In addition and in the alternative, Conway has not shown that he suffered a qualifying adverse retaliatory act. In order to make such a showing he must allege retaliatory actions that rise to the level of a constitutional violation. *Morris v. Powell*, 449 F.3d 682, 685 (5th Cir. 2006) (citing *Greninger*, 188 F.3d at 325–26. Verbal threats and harassment do not violate the United States Constitution. *Bender v. Brumley*, 1 F.3d 271, 274 (5th Cir. 1993) (citation omitted). And, as already noted, Conway's allegations that Honesto spat at him and used a racial epithet do not either. In short, the actions Conway alleges must be characterized as *de minimis*, and as such, do not support a retaliation claim. *Morris*, 449 F.3d at 686. Significantly, the actions did not deter Conway from pursuing his action in the Southern District of Texas. *See Conway v. Heckler*, H-4:14-CV-3580, *appeal docketed*, No. 15-20042 (5th Cir. Jan. 26, 2015). Nor did they deter Conway from pursuing an appeal in the action. In fact, Conway filed seven documents in the appeal in May 2015 the same month in which he claims Honesto targeted him with threats. *See Conway v. Heckler,* No. 15-20042.

8

Thus, although Conway alleges that Honesto acted to deter him from litigating his action in the Southern District of Texas, Honesto's acts had a *de minimis* impact. And acts that are "so *de minimis* that they would not deter the ordinary person from further exercise of his rights . . . do not rise to the level of a constitutional violation and cannot form the basis of a § 1983 claim." *Morris*, 449 F.3d at 686.

B. *Allegations Regarding Disciplinary Case and Pre-hearing Segregation*

Conway contends that Honesto falsified the charge of assaulting an officer and did so out of malice. He contends Honesto violated his due process rights and that the finding of guilt was not supported by adequate evidence. ECF No. 1 at 9, 13. He also complains that he was placed in an administrative segregation/assault precaution cell after the charge was filed and that he remained there for twenty-one days. ECF No. 1 at 17. He contends that his placement in the cell violated his due process rights.

Turning first to the placement in administrative segregation, "absent ordinary circumstances, administrative segregation that is merely incident to the ordinary life as a prisoner is not grounds for a constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable interest." *Wilkerson v. Goodwin*, 774 F.4d 845, 853 (5th Cir. 2014) (internal quotations omitted). The prisoner must demonstrate that he was subjected to extraordinary circumstances in administrative segregation in order to maintain a due process claim. *Hernandez v. Velasquez*, 552 F.3d 556, 562 (5th Cir. 2008). Conway claims he was denied the right to possess clothing, eye glasses, legal supplies, soap, and spoons and was served sandwiches rather than hot meals during the twenty-one days in the segregation cell. ECF Nos. 1 at 7; 29 at 2. He further claims that he was not given recreation time or allowed time in the day room and was allowed

9

showers "only when the officer working woke you before the other inmate or after all the inmates took their shower maybe." ECF No. 29 at 2, 4.

Turning to the restrictive conditions Conway alleges, the undersigned relies on *Hernandez*, a case with facts similar to those at issue in this case. In *Hernandez*, the plaintiff was moved from general population to administrative lock down for twelve months during a prison investigation of gang-related activity. 522 F.3d at 558. During the twelve months in lock down, the plaintiff was allowed to leave his cell only for showers, medical appointments, and family visits and was never allowed out of his cell for recreation. *Id*. at 559. Thus, like Conway, by virtue of his placement in lock down, the plaintiff in *Hernandez* was effectively denied the privileges enjoyed by inmates in general population and was allowed very little time outside of his cell. Although the inmate was confined in lock down for twelve months, the court characterized the confinement as "temporary" and an experience that was not an atypical and significant hardship. *Id*. at 563. Here, the duration of Conway's confinement in the segregation cell for twenty-one days falls far short of the twelve months of lock down confinement in *Hernandez* and the conditions were no more restrictive.

In regard to Conway's allegations that he was fed only sandwiches, such a deprivation does not violate the constitution. *Trapp v. Scott*, 96 F.3d 1445, at *1, 1996 WL 512221 (5th Cir. Aug. 28, 1996) (inmate who complained that he was served sandwiches in lieu of regular meals while in segregation did not state a constitutional claim). Conway has not alleged that the sandwiches that prison staff gave him were nutritionally inadequate. Nor has he alleged that he suffered adverse physical effects or risks to his health. Conway may have preferred something different than sandwiches, but "[m]ere distaste does not represent a constitutionally cognizable

complaint." *See Gabel v. Estelle*, 677 F. Supp. 514, 515 (S.D. Tex. 1987) (dismissing prisoners' claims that they were fed only peanut butter sandwiches during a prison lock down).

Finally, Conway alleges in his responses to the questionnaire that there was feces on the wall of his cell and that the cell smelled of urine. Conway has not, however, alleged that Honesto was responsible for the alleged conditions. Personal involvement is an essential element of a § 1983 action. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). In addition and in the alternative, Conway's request for monetary relief is barred because he has not alleged that he suffered a physical injury as a result of the conditions in the cell. 42 U.S.C. § 1997e(e).

In regard to the disciplinary case at issue, the undersigned construes Conway's complaint that the finding of guilt was not supported by adequate evidence as a due process claim. *See Morgan v. Dretke*, 433 F.3d 455, 457 (5th Cir. 2005) (construing as a due process claim the prisoner's allegation that evidence was insufficient to sustain his disciplinary conviction). The due process guarantees of the United States Constitution require that a prisoner be afforded minimum due process procedures to insure that he is not arbitrarily denied state-created rights. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Disciplinary procedures comport with procedural requirements if the evidence shows: (1) advance written notice to the prisoner of the disciplinary charges; (2) an opportunity for the prisoner, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *see also Banuelos*, 41 F.3d at 234.

Conway indicated in the memorandum filed with his complaint that he was provided advance notice of the charges and attended the hearing. And authenticated records from TDCJ show that Conway testified at the hearing, the hearing officer conducted cross-examination, witness statements were read into the record, and the hearing officer provided a written statement of the evidence and the reason for the disciplinary action. Courts must not set aside decisions made by prison administration, such as the disciplinary case at issue in this case, when there is some basis in fact to support it. *See Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). A guilty determination in a disciplinary case passes court review if there are "some facts" or "any evidence at all" to support the determination. *Gibbs v. King,* 779 F.2d 1040, 1044 (5th Cir. 1986) (citations omitted). Based on evidence in the authenticated records from the Montford Unit, there is at least "some evidence" that supports the disciplinary charge and the finding of guilt.

To the extent that Conway seeks expungement for the purpose of regaining lost good time credits that he believes he would have earned and to the extent such a claim is cognizable, the proper vehicle for such an action is a *habeas corpus* action rather than a section 1983 action. *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). And the undersigned notes that Conway has asserted such an action and the court dismissed the action with prejudice based on its finding that Conway's claims did not provide a basis for federal *habeas corpus* relief. Order, *Conway v. Stephens*, 5:15-CV-173-C, (N.D. Tex. Sept. 1, 2015) (ECF No. 12).

Finally, the undersigned construes Conway's allegations as a claim that Honesto filed the disciplinary case against him in order to retaliate against him. As discussed above, to the extent Conway alleges that Honesto retaliated against him because he witnessed actions that his daughter

12

took against Conway's former cell mate, merely witnessing action is not a constitutionally protected activity that would support a retaliation claim. While the law associated with First Amendment retaliation protects prisoners from retaliation for accessing the courts and reporting an officer's misconduct, *Woods,* 60 F.3d at 1164, it does not apply to passive conduct such as that Conway alleges. Further, as discussed above, Conway has not alleged a chronology related to the filing of the action in the Southern District of Texas from which retaliation can be inferred.

    C.    *Remaining Allegations*

In regard to the threats that Conway claims Honesto made to his safety and that of his family, the undersigned would not condone the use of threats by any officer; however, allegations of verbal threats and harassment do not state an actionable claim. *Bender v. Brumley*, 1 F.3d 271, 274 (5th Cir. 1993) (citation omitted); *see also Boyd v. Farris*, 575 F. App'x 517, 520 (5th Cir. 2014) (applying holding in *Bender* to allegations of verbal threats made during the course of arrest). In regard to his assertion of the protections of the ADA, the act prohibits public agencies from discriminating against disabled persons in the provision of public programs and services. 28 U.S.C. § 12132. Conway has not alleged any facts that would show that he was denied the services, programs, or activities provided by TDCJ. Although he alleges that Honesto threatened to ensure that his psychiatric treatments and medications were discontinued, he has not alleged that he has been denied psychiatric treatment or medications and authenticated medical records from TDCJ do not show such.

## IV.    Recommendation

For the foregoing reasons, the undersigned recommends that district court find that the allegations in Conway's Complaint are frivolous and dismiss his Complaint with prejudice pursuant

13

to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c)(1). The undersigned further recommends that any pending motions be denied as moot.

## V.     Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2015); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which an objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:   October 16, 2015.

NANCY M. KOENIG
United States Magistrate Judge